if it be a covenant. The instrument executed by the plaintiff was a nullity.

The able discussion of counsel respecting the question of whether the said provision was a condition or a covenant seems to us entirely aside from the question involved on this appeal; nor do we think it material to inquire whether that provision renders the title unmarketable. The parties have expressly stipulated what its effect shall be, namely, that, unless the plaintiff could within 18 months procure a release of it, the $2,500, deposited with the Title Guarantee & Trust Company, should be returned to the vendee "in full release for all penalties or claims of any kind against the vendor because of such conditions." In effect, the plaintiff sold the property for $68,000 if she could procure the release provided for, and for $65,500 if she could not. Though the title may have been marketable, the vendee was not obliged to contract for it; and the court cannot substitute a different contract in place of the one actually made, because it may think that the plaintiff was unwise in making it. If the contract had been silent respecting the alleged condition or covenant, the law would determine whether the title was marketable; but the court cannot decide that to be immaterial which the parties agreed was a defect to be cured by a release or to be allowed for in fixing the purchase price. The principle of Flanagan v. Fox, 6 Misc. Rep. 132, 26 N. Y. Supp. 48 affirmed on the opinion below 144 N. Y. 706, 39 N. E. 857, is applicable, and controls the decision of this case.

The judgment is affirmed.

Judgment unanimously affirmed, with costs. All concur.

---

### GORMAN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. March 12, 1909.)

1. MASTER AND SERVANT (§ 246*)—CONTRIBUTORY NEGLIGENCE—SUDDEN PERIL.
   The fact that an employé, working in a sitting position between the tracks on a trestle, stood up on seeing a train 15 feet away, and was struck by the step of the car, does not render him guilty of contributory negligence, though he might have escaped injury if he had remained passive where he was.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 792; Dec. Dig. § 246.*]

2. APPEAL AND ERROR (§ 1032*) — REVIEW — HARMLESS ERROR — BURDEN OF SHOWING.
   Where defendant invites a charge not applicable to the issues, and the court in giving it erroneously modifies it, the defendant must show that harm resulted from the modification, in order to justify a reversal therefor.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4050; Dec. Dig. § 1032.*]

Appeal from Trial Term, Kings County.

Action by James Gorman against the Brooklyn Heights Railroad Company for personal injuries. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

D. A. Marsh, for appellant.

Henry M. Dater and George F. Elliott, for respondent.

WOODWARD, J. The plaintiff was injured in 1905 while employed by Westinghouse, Church, Kerr & Co., contracting engineers, who were engaged under a contract with the Long Island Railroad Company in performing certain work for the latter company on the trestle owned by it across Jamaica Bay, from Long Island to Rockaway. The defendant was at the time operating a steam railroad over this trestle, under a trackage arrangement with the Long Island Railroad Company. The plaintiff was employed, with a gang of 50 or 60 men, upon this trestle; the plaintiff's particular occupation being to put out the fires which were started from time to time by the other workmen in performing the work. The Long Island Railroad Company had stationed flagmen at a distance of about 150 feet each way from the point where the men were at work, and it appears from the evidence that it was the custom for these flagmen to bring all trains to a stop, that then a warning was given to the workmen, and when they had cleared the tracks the trains were permitted to pass along. On the day of the accident, at about 4:20 p. m., the plaintiff was sitting upon the pail which he used in his work between the rails of the double tracks upon this trestle. An electrical equipment, known as a third rail, had been placed between the tracks, and there was a space between these third rails. The plaintiff was in this space when the train came upon him, as is claimed in his behalf, without having made the customary stop, and without other warning. He says that he attempted to get up, for the purpose of avoiding danger, and that before he could reach a standing position he was struck, not by the engine, but by the front step of the first coach, sustaining serious injuries.

There was a sharp conflict of evidence as to just what occurred at the time of the accident and just prior thereto; but we are persuaded that there was evidence which justified the jury in finding that the defendant was negligent in the operation of its train, under the circumstances presented, and that the plaintiff was free from contributory negligence. It is claimed that the plaintiff was in a position of safety if he had remained sitting just as he was, and there was evidence from which it might be gathered that, if he had remained absolutely passive, he might have escaped; but the evidence also showed that the space was very limited between the tracks, allowing for the overhang of the cars, and the plaintiff, suddenly discovering the train coming towards him, 12 or 15 feet away, at the rate of 6 or 8 miles an hour, was not bound to do the most prudent thing in the world. He was only called upon to exercise the degree of care to be expected of the ordinarily prudent man under the circumstances, and it was clearly for the jury to say whether his action, under the circumstances, constituted reasonable care.

There was some very incidental testimony in the case in reference

to the third rails, and defendant's counsel asked the court to charge the jury that the jury cannot find from the testimony in this case that there was any electricity in the third rail. The court refused to charge this, but subsequently, upon the consent of plaintiff's counsel, the court charged:

"So you must assume there was no electricity in the rail; but you may consider whether the men knew it, or not."

Defendant excepted to this modification. While we see no occasion for the modification, we do not see that it could have prejudiced the defendant in any way. There was, as we see it, no occasion for calling on the court to make any charge in reference to this question. No one was apparently contending that the third rail had anything to do with the accident. It was referred to merely as showing the physical situation, and the charge as finally made to the jury complied with the defendant's request in the main. In the modification it could only go to the question of the plaintiff's contributory negligence, and the whole contention of the plaintiff was that he did not have time to get out of the way after he discovered the approaching engine; not that he was absorbed in the contemplation of the third rail, or its condition. The defendant having invited the reference to the condition of the third rail, it is incumbent upon it to show that harm came from the modification, in order to justify a reversal; and we are of the opinion that this much of the charge could not have changed the result of the trial in any measure.

The judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.